## Curtis Ivey v. The State.

No. 14596.  Delivered June 24, 1932.
Reported in 51 S. W. (2d) 716.

The opinion states the case.

*Howard & Jackson,* of El Paso, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, Presiding Judge.—Passing a forged instrument is the offense; penalty assessed at confinement in the penitentiary for five years. The instrument is described as follows:

"U. S. Dollar Travelers Cheque | M-6500104
When countersigned below with | Six Five Cipher Cipher
this signature | One Cipher Four.
Before cashing write here city and date

J. B. Bench | 19———

AMERICAN EXPRESS COMPANY
Affiliated With The Chase National Bank of the City of New York
At Its Paying Agencies

Pay this Cheque from our
Balance to the order of————————————————————————$10.00

In United States | In All Other Countries
Ten Dollars | At Current Buying Rate for Bankers' Cheques on New York.

Countersign here in presence of person cashing

Geo. Weston
*J. B. Bench* | Treasurer.

This cheque is Redeemable Only at the Company's Offices and Bankers in

"United States"

The travelers' check was signed by the maker, George Weston, Treasurer. The fraudulent writing of the name, J. B. Bench, in the instrument, it is thought comes within the terms of forgery by virtue of article 992, P. C., 1925, in which it is declared: "It is a forgery to make, with intent to defraud or injure, a written instrument, by filling up over a genuine signature."

The appellant and one Cloud were jointly indicted and jointly tried. The facts touching their culpability are not identical. In trying them together under such circumstances, it is difficult to preserve the record for appeal in such condition as will differentiate between the rights of the respective indictees. In the present instance, Cloud made an extrajudicial confession which was introduced on the trial. The following are the material parts of the confession: About the 31st of January, Cloud learned that some man was trying to sell some "hot money." He located the man and ascertained that the paper for sale was not money but travelers' checks, which were minus the signature of the consignee. He purchased ten of these checks, and in each of them wrote under the line left for the signature, "J. B. Bench," a fictitious name. He retained the check for ten days before attempting to cash them, but did cash check No. M-6500104, at the Plateau Filling Station. From the confession the following is quoted: "When I got all of these checks they were in blank and when I asked the man to cash one of them I would always write the name J. B. Bench in the lower left-hand corner. I had previously written the name J. B. Bench in the upper left-hand corner before I started out cashing them. * * * Curtis Ivey was with me on all of the trips when I was cashing these checks from February 8th or February 12th, 1931."

From the testimony of R. B. Ivey, brother of the appellant, Curtis Ivey, it appears that Cloud came to the home of the witness, who lived at Amherst, about the 8th of February; that Curtis Ivey and Cloud left the home of the witness in the latter's car and returned in about four days. The car, on its return, had no license number.

The witness Tinnin, who conducted the Plateau Service Station, testified that he cashed the travelers' checks described in the indictment, about the 10th of February. In his direct testimony he said: "It was in the daytime when I cashed this check. Mr. Ivey was the man that passed the instrument to me. He was traveling in a Ford car. * * * There was another party in the car with Mr. Ivey. I didn't see the other man: he didn't get out of the car."

On cross-examination, the witness said: "I had never seen either of

the men before. I had a transaction there a few minutes, selling gasoline. * * * The men were about the same size; both are dark complexioned; their hair is dark. I can be positive it was not the other man who gave me the check. * * * The check was signed on the top line before it was given me, but the man signed it there in my presence. The signature on the top line looks very much like the signature on the bottom line; looks like the same man wrote both signatures. The man who passed it to me signed that bottom signature in my presence. * * * The man that remained in the car didn't speak to me and didn't get out."

The witness said that about a week after receiving the check he saw a photograph of Ivey. There were other photographs shown him at the same time by Mr. Baty, the agent of the express company. He identified one of these photographs as that of Ivey. No photograph of Cloud was among those shown him. He said that two persons were present at the filling station when the check was passed.

A banker, who was a handwriting expert, testified for the state that in his opinion the name J. B. Bench, in both places was apparently written by the same person; at least, that was his opinion. It was shown by the banker that about the 7th of January, 1931, his bank was robbed of various travelers' checks, one of which he identified as that described in the indictment. The checks had different serial numbers, but the payee's name was not on any of them. He said further that neither Cloud nor Ivey were present at the time the checks were taken from the bank. The reception of his testimony was opposed upon the ground that it was proof of a disconnected offense.

Cloud's confession seems to have come into the evidence without objection. In fact, no objection to it would have been tenable since the cases were tried together. Cloud's confession, if opposed, would not have been evidence against the appellant.

The banker's testimony showed that neither the appellant nor Cloud was the robber.

After defining the law of principals, the court, in submitting the case to the jury, used the following language: "If you believe from the evidence beyond a reasonable doubt that at the time and place mentioned in the indictment either of these defendants passed to C. G. Tinnin the instrument in writing described in the indictment, and further so believe that it was a forged instrument and further so believe that at the time of passing it the defendant who passed it knew it was forged, or if you believe that the same was a forged instrument and that the person passing it knew it was forged and that it was passed by one of these defendants and that the other was present and knew the unlawful intent and aided in the passing of the same or agreed to it in pursuance of a common design, then and in either event find the defendant or defendants as to whom you so believe guilty of knowingly passing a forged instrument in

writing as true and assess his or their punishment severally at confinement in the penitentiary for a term of not less than two nor more than five years. If you do not so believe acquit the defendant or defendants as to whom you do not so believe, unless you find him or them guilty of knowingly having in possession a forged instrument with intent to pass the same as true."

It appears from an analysis of the evidence that the alleged forged instrument was acquired by Cloud in the absence of the appellant. There is an absence of testimony showing that the appellant knew of the robbery through which the checks were lost or that he knew that Cloud had acquired them illegally. As to whether the check was passed at the filling station by Cloud or Ivey the evidence is conflicting. The testimony upon the subject all comes from the state. In Cloud's confession, which the state introduced, it was shown that he passed an instrument countersigned in the name of Bench. An expert witness introduced by the state upon the subject tends to corroborate Cloud's testimony to the effect that he was the one who countersigned the check. It is to be inferred from his testimony that before he and the appellant became associated on the trip, Cloud had written the name of J. B. Bench on the upper left-hand corner of the checks. His signature being upon the check in one place, it would be quite consistent with his policy that the countersigning should also be in his handwriting. The state's witness Tinnin identified the appellant as the person who delivered the check to him and countersigned it. There is no direct testimony to show that the appellant knew that the check was forged or fraudulently obtained by Cloud. The charge of the court properly states the law that the appellant's guilt would depend upon his acting in the transaction with guilty knowledge. That phase of the case was not submitted to the jury in a manner that would protect the appellant's rights. The charge connected the two upon equal terms, while from the state's testimony, Cloud was the actor in every particular, unless it be that the jury should find that it was the appellant who put on the check at the time it was passed the name of J. B. Bench. That seems the only cogent circumstance discernible from the evidence upon which the essential fact of guilty knowledge could be fixed upon the appellant Ivey. Upon another trial, on like facts, there should be a charge on the law of circumstantial evidence. See Verner v. State, 117 Texas Crim. Rep., 112, 35 S. W. (2d) 428.

In the present instance, Cloud's admitted acquisition of the stolen checks, with knowledge that they were stolen, differentiates his case from that of the apepllant, who was not preesnt when the checks were acquired, and so far as the record shows, knew nothing of the circumstances under which Cloud obtained them.

The appellant's reputation as a law-abiding citizen was proved to be good.

On the record before this court, the opinion is entertained that the judgment convicting the appellant Ivey should be reversed and the cause remanded, which is accordingly ordered.

*Reversed and remanded.*